```
                                             F I L E D
                                        CLERK, U.S. DISTRICT COURT

                                            12/07/2023

                                       CENTRAL DISTRICT OF CALIFORNIA
                                       BY: _____TV_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>ANTHONY FARRER,<br>  aka "The Timepiece<br>      Gentleman,"<br><br>            Defendant. | CR No. 2:23-cr-00601-JLS<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud;<br>18 U.S.C. § 1341: Mail Fraud;<br>18 U.S.C. §§ 981(a)(1)(C) and 28<br>U.S.C. § 2461(c): Criminal<br>Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH SIX

[18 U.S.C. § 1343]

A.    INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.    The Timepiece Gentleman was a Limited Liability Company incorporated in the State of California, and operating out of Beverly Hills, California, within the Central District of California.

2.    Defendant ANTHONY FARRER, also known as "The Timepiece Gentleman," was the owner and operator of The Timepiece Gentleman.

3.    Defendant FARRER and The Timepiece Gentleman purported to buy and sell luxury watches, including selling watches for clients on consignment.  In a typical consignment sale, defendant FARRER would take possession of a client's watch, agreeing to display the watch for sale at The Timepiece Gentleman storefront located in Beverly Hills, California, as well as through online and social media marketing. Once the watch was sold, defendant FARRER typically was supposed to remit the sales proceeds back to the client, less a consignment fee, typically around 5 percent of the sales price.  If a watch did not sell on consignment within a specified period of time or for a specified price, the watch was to be returned to the client.

4.    In addition to its consignment sale business, defendant FARRER and The Timepiece Gentleman also purported to purchase watches on behalf of clients.  In a typical purchase, a client would send funds to defendant FARRER, often by wire transfer into bank accounts controlled by defendant FARRER or through other payment processors such as Zelle, for the purpose of defendant FARRER locating and purchasing a specified watch on behalf of the client.

5.    Defendant FARRER and The Timepiece Gentleman conducted its purported business of consignment sales, as well as buying and selling watches, for clients located both in the Central District of California as well as throughout the United States.

B.   THE SCHEME TO DEFRAUD

6.   Beginning on or about a date unknown, but no later than in or around November 2022, and continuing to on or about November 7, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant FARRER, and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud client victims as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

7.   The scheme to defraud operated, in substance, in the following manner:

a.   Defendant FARRER would communicate with clients by text message, email, telephone calls, and through other means, in interstate and foreign commerce, to discuss clients sending The Timepiece Gentleman their luxury watches for consignment sale.

b.   Defendant FARRER would agree to take possession of client watches for consignment sale purportedly so that the watches could be displayed and advertised for sale both in person at The Timepiece Gentleman storefront in Beverly Hills, California, as well as through online and social media marketing.

c.   Defendant FARRER would send messages attaching shipping labels to clients so that they could ship their watches to The Timepiece Gentleman for consignment sale.

d.   Defendant FARRER would take possession of client watches for consignment sale, agreeing that the sales proceeds be remitted back to the clients shortly after the watches were sold.

1         e.   However, rather than selling client watches and

2 remitting payment back to the clients who owned the watches and who

3 were owed payment for the sales, defendant FARRER would instead sell

4 or otherwise dispose of the watches for his own benefit.

5         f.   For example, defendant FARRER would sell client

6 watches, unbeknownst to the client, and would keep the sales proceeds

7 for himself.

8         g.   Defendant FARRER would also use client watches,

9 unbeknownst to the client, as collateral for loans that defendant

10 FARRER took out from lenders.  As part of those loans, rather than

11 selling watches on consignment for the client, defendant FARRER would

12 instead transfer possession of the client watches as collateral to

13 lenders, without client knowledge or approval to do so.

14         h.   When a client would inquire about the status of a

15 watch on consignment sale, defendant FARRER would falsely state that

16 the watch had not yet sold, when, in fact, the watch had been sold or

17 disposed of, and the funds kept for defendant FARRER's own benefit.

18         i.   Additionally, defendant FARRER would communicate with

19 clients by text message, email, telephone calls, and through other

20 means, in interstate and foreign commerce, to arrange for clients to

21 send defendant FARRER money so that defendant FARRER could locate and

22 purchase watches on behalf of clients.

23         j.   Defendant FARRER would accept funds from clients,

24 including by wire transfers and through Zelle, for the purpose of

25 defendant FARRER purchasing a specified watch on behalf of the

26 client.

27

28

k.    Rather using the client funds to purchase watches on behalf of clients, however, defendant FARRER would use the funds for other purposes, including to fund his lavish lifestyle.

l.    When a client would inquire about the status of a purchase for which the client sent defendant FARRER money or of a watch on consignment sale, defendant FARRER would often send another watch to the client to tide the client over and lull the client into a false sense of security regarding the status of the purchase or sale.  However, that other watch defendant FARRER would send to lull clients would often actually belong to other clients who had themselves provided that other watch to The Timepiece Gentleman for consignment sale, and did not know of or authorize the use of their watches by defendant FARRER for this purpose.

m.    For example, through his scheme, defendant FARRER defrauded the following client victims, among others:

Victim B.S.

n.    On or about July 6, 2023, defendant FARRER sent messages to client victim B.S., a resident of Arizona, convincing B.S. to send watches to defendant FARRER for consignment sale.

o.    On or about July 6, 2023, defendant FARRER sent a message to B.S. attaching a Federal Express shipping label so that B.S. could ship his Patek Phillipe watch to defendant FARRER for consignment sale.

p.    On or about July 7, 2023, defendant FARRER sent a message to B.S. attaching a Federal Express shipping label so that B.S. could also ship his Rolex Sky-Dweller watch to defendant FARRER for consignment sale.

q.   On or about July 7, 2023, B.S. sent two packages via Federal Express, one with a Patek Phillippe watch and a second with a Rolex Sky-Dweller watch, to The Timepiece Gentleman in Beverly Hills, California, for consignment sale.

r.   On or about July 18, 2023, when B.S. inquired about the consignment sales, defendant FARRER told B.S. that the Rolex Sky-Dweller watch had sold for $70,000.

s.   On or about July 20, 2023, defendant FARRER told B.S. that the Patek Phillipe watch had also been sold.  When asked why he hadn't yet received payment for the sold watches, defendant FARRER told B.S. that defendant FARRER did not have the funds to pay.  In place of payment, and to lull B.S. from taking action that could potentially expose the fraud scheme, defendant FARRER sent B.S. a Rolex Red Letter Sea-Dweller watch on or about July 27, 2023.

t.   After receiving the Rolex Red Letter Sea-Dweller watch from defendant FARRER, B.S. determined that the watch actually belonged to another client victim, F.L., who had provided the watch to defendant FARRER for consignment sale and was not aware and did not authorize defendant FARRER to use the watch for payment of a debt defendant FARRER owed to another client.

Victim F.L.

u.   On or about July 12, 2023, client victim F.L., a resident of San Diego, California, sent a Rolex Red Letter Sea-Dweller watch via Federal Express to The Timepiece Gentleman in Beverly, Hills, California, for consignment sale.

v.   Beginning on or about July 28, 2023, client victim F.L. attempted to reach out to defendant FARRER to determine the status of the consignment sale of his watch, but was not able to

1  obtain a response from defendant FARRER regarding the status of the
2  sale.

3          w.   F.L. later viewed a social media post by B.S.
4  regarding a Rolex Red-Letter Sea-Dweller that B.S. had received from
5  defendant FARRER in lieu of payment owed to B.S. for consignment sale
6  of another watch.  F.L. determined that to be his watch that he had
7  sent to defendant FARRER for consignment sale.  F.L. was not aware
8  and had not authorized defendant FARRER to send his watch to B.S. as
9  payment for a debt defendant FARRER owed, rather than selling the
10  watch on consignment and paying B.S. the sale proceeds, as defendant
11  FARRER had agreed to do.

12  <u>Victim W.S.</u>

13          x.   Beginning in or around November 2022, defendant FARRER
14  exchanged messages with client victim W.S., a resident of South
15  Carolina, regarding the purchase and sale of watches.  In or around
16  May or June 2023, W.S. began sending watches to The Timepiece
17  Gentleman in Beverly Hills, California, for consignment sale.

18          y.   On or about June 26, 2023, defendant FARRER obtained a
19  loan, using as collateral for the loan watches that W.S. had
20  previously sent to The Timepiece Gentleman for consignment sale.
21  Defendant FARRER also transferred possession of W.S.'s watches to the
22  lender to secure the loan.  W.S. was not aware and did not authorize
23  defendant FARRER to use his watches as collateral for a loan, nor did
24  W.S. authorize defendant FARRER to transfer possession of his watches
25  to the lender rather defendant FARRER than selling the watches and
26  remitting the purchase funds to W.S.

27          z.   On or about July 15, 2023, W.S. sent, via Malca-Amit,
28  a private secure interstate shipping carrier, approximately 75

watches to The Timepiece Gentleman in Beverly Hills, California, for consignment sale.

aa.  After sending the approximately 75 watches to The Timepiece Gentleman, W.S. discovered that rather than advertising and selling watches that W.S. had previously sent to defendant FARRER, defendant FARRER had instead used the watches as collateral for a loan and gave possession of W.S.'s watches to the lender.  W.S. had to then pay the lender the balance on the loan, plus interest, to reclaim possession of his own watches.

Victim L.L.

bb.  On or about July 21, 2023, client victim L.L. delivered two watches, a Richard Mille Baby Nadal and a Rolex Platinum Arabic Dial, to The Timepiece Gentleman in Beverly Hills, California, for consignment sale.

cc.  On or about July 21, 2023, defendant FARRER received a wire payment of $170,000 for the sale of L.L.'s Richard Mille Baby Nadal watch, which was later picked up by the buyer from The Timepiece Gentleman storefront on or about July 24, 2023.

dd.  On or about July 31, 2023, despite having previously sold L.L.'s Richard Mille Baby Nadal watch as well as L.L.'s Rolex Platinum Arabic Dial watch and having not remitted payment back to L.L. for the sales, when L.L. inquired about the watches, defendant FARRER falsely told L.L. that both his watches were still at The Timepiece Gentleman store.

ee.  As a result of the scheme to defraud, defendant FARRER obtained money and property belonging to client victims of at least $4,700,000.

C.   <u>USE OF THE WIRES</u>

8.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant FARRER, and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme to defraud, transmitted and caused to be transmitted by means of wire communication in interstate commerce the following items:

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| ONE | 6/26/2023 | Wire transfer of $300,000 to defendant FARRER from a lender for a loan to defendant FARRER secured by defendant FARRER using victim W.S.'s consigned watches as collateral for the loan. |
| TWO | 7/6/2023 | Text message from defendant FARRER to victim B.S. convincing B.S. to send a Patek Phillipe watch to defendant FARRER for sale. |
| THREE | 7/6/2023 | Text message from defendant FARRER to victim B.S. attaching a Federal Express shipping label for victim B.S. to send a Patek Phillipe watch to defendant FARRER for sale. |
| FOUR | 7/7/2023 | Text message from defendant FARRER to victim B.S. attaching a Federal Express shipping label for victim B.S. to send a Rolex Sky-Dweller watch to defendant FARRER for sale. |
| FIVE | 7/21/2023 | Wire transfer of $170,000 to defendant FARRER from the buyer of a Richard Mille Baby Nadal watch belonging to victim L.L. |
| SIX | 7/31/2023 | Text message from defendant FARRER to victim L.L. in which defendant FARRER states that L.L.'s consigned watches are still at The Timepiece Gentleman store, when, in fact, defendant FARRER had already sold victim L.L.'s watches and had not remitted payment to victim L.L. |

COUNTS SEVEN THROUGH ELEVEN

[18 U.S.C. §§ 1341, 2(b)]

9.    The Grand Jury re-alleges and incorporates paragraphs 1 through 7 of this Indictment here.

A.   THE SCHEME TO DEFRAUD

10.   Beginning on or about a date unknown, but no later than in or around November 2022, and continuing to in or about November 7, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANTHONY FARRER, also known as "The Timepiece Gentleman," and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud customer victims as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

11.   The scheme to defraud operated, in substance, as described in paragraph 7 of this Indictment, which is re-alleged and incorporated here.

B.   USE OF THE MAILS

12.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant FARRER, and others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme to defraud, willfully deposited and caused to be deposited the following matter and things to be sent and delivered by private and commercial interstate carriers, namely, Federal Express and Malca-Amit, and took and received therefrom such matter and things, and caused to be

delivered by such carriers according to the directions thereon, the following matter and things, at the following addresses:

| Count | Date | Recipient | Matter |
|-------|------|-----------|--------|
| SEVEN | 7/7/2023 | The Timepiece Gentleman in Beverly Hills, California | Federal Express package containing Patek Phillippe watch belonging to victim B.S. |
| EIGHT | 7/7/2023 | The Timepiece Gentleman in Beverly Hills, California | Federal Express package containing Rolex Sky-Dweller watch belonging to victim B.S. |
| NINE | 7/12/2023 | The Timepiece Gentleman in Beverly Hills, California | Federal Express package containing Rolex Sea-Dweller belonging to victim F.L. |
| TEN | 7/15/2023 | The Timepiece Gentleman in Beverly Hills, California | Malca-Amit shipment of approximately 75 watches belonging to victim W.S. |
| ELEVEN | 7/27/2023 | Victim B.S. in Tempe, Arizona | Federal Express package containing Rolex Red-Letter Sea-Dweller belonging to victim F.L. |

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Eleven of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

1 | substantially diminished in value; or (e) has been commingled with
2 | other property that cannot be divided without difficulty.

A TRUE BILL


    /S/
Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

JOSHUA O. MAUSNER
Assistant United States Attorney
Chief, Violent & Organized Crime
Section