E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JOSHUA O. MAUSNER (Cal. Bar No. 260251)
Assistant United States Attorneys
Chief, Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0619
    Facsimile: (213) 894-3713
    E-mail:    joshua.mausner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 23-00601-JLS |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT ANTHONY FARRER |
| v. | |
| ANTHONY FARRER,<br>  aka "The Timepiece Gentleman," | |
| Defendant. | |

    1.   This constitutes the plea agreement between ANTHONY FARRER, also known as "The Timepiece Gentleman ("defendant"), and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.   Defendant agrees to:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts One and Seven of the Indictment in <u>United States v. Anthony Farrer</u>, CR No.

23-00601-JLS, which charge defendant with wire fraud, in violation of 18 U.S.C. § 1343, and mail fraud, in violation of 18 U.S.C. § 1341, respectively.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at

1    usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

2    Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

3    Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

4    criminal debt shall be assessed based on the completed Financial

5    Disclosure Statement and all required supporting documents, as well

6    as other relevant information relating to ability to pay.

7         j.   Authorize the USAO to obtain a credit report upon

8    returning a signed copy of this plea agreement.

9         k.   Consent to the USAO inspecting and copying all of

10   defendant's financial documents and financial information held by the

11   United States Probation and Pretrial Services Office.

12      3.   Defendant further agrees:

13        a.   To forfeit all right, title, and interest in and to

14   any and all monies, properties, and/or assets of any kind, derived

15   from or acquired as a result of, or used to facilitate the commission

16   of, the illegal activity to which defendant is pleading guilty

17   (collectively, the "Forfeitable Assets").

18        b.   To the Court's entry of an order of forfeiture at or

19   before sentencing with respect to the Forfeitable Assets and to the

20   forfeiture of the assets.

21        c.   To take whatever steps are necessary to pass to the

22   United States clear title to the Forfeitable Assets, including,

23   without limitation, the execution of a consent decree of forfeiture

24   and the completing of any other legal documents required for the

25   transfer of title to the United States.

26        d.   Not to contest any administrative forfeiture

27   proceedings or civil judicial proceedings commenced against the

28   Forfeitable Assets.  If defendant submitted a claim and/or petition

for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE USAO'S OBLIGATIONS</u>

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable

Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Not seek a sentence of imprisonment above the mid-point of the applicable Sentencing Guidelines range, provided that the total offense level used by the Court to determine that range is 24 or higher (after reductions for acceptance of responsibility) and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the mid-point of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSES</u>

5.   Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: 1) Defendant knowingly devised or participated in a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts.  Deceitful statements or half-truths may constitute false or fraudulent representations; (2) The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) Defendant acted with the

1  intent to defraud, that is, the intent to deceive and cheat; and (4)

2  Defendant used, or caused to be used, an interstate wire

3  communication to carry out or attempt to carry out an essential part

4  of the scheme.

5      6.  Defendant understands that for defendant to be guilty of

6  the crime charged in Count Seven, that is, mail fraud, in violation

7  of Title 18, United States Code, Section 1341, the following must be

8  true: 1) Defendant knowingly devised or participated in a scheme or

9  plan to defraud for the purpose of obtaining money or property by

10  means of false or fraudulent pretenses, representations, promises, or

11  omitted facts.  Deceitful statements of half-truths may constitute

12  false or fraudulent representations; (2) The statements made or facts

13  omitted as part of the scheme were material; that is, they had a

14  natural tendency to influence, or were capable of influencing, a

15  person to part with money or property; (3) Defendant acted with the

16  intent to defraud; that is, the intent to deceive and cheat; and (4)

17  Defendant used, or caused to be used, the mails to carry out or

18  attempt to carry out an essential part of the scheme.

19  <u>PENALTIES AND RESTITUTION</u>

20      7.  Defendant understands that the statutory maximum sentence

21  that the Court can impose for a violation of Title 18, United States

22  Code, Section 1343 is: 20 years' imprisonment; a three-year period of

23  supervised release; a fine of $250,000 or twice the gross gain or

24  gross loss resulting from the offense, whichever is greatest; and a

25  mandatory special assessment of $100.

26      8.  Defendant understands that the statutory maximum sentence

27  that the Court can impose for a violation of Title 18, United States

28  Code, Section 1341 is: 20 years' imprisonment; a three-year period of

supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 40 years imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

10.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result of: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $5,691,005.90, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.   The Court will also order forfeiture of any property derived from or acquired as a result of the illegal activity to which defendant is pleading guilty or substitute assets up to the value of that property.

12.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

14.   Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject

defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

FACTUAL BASIS

15.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on or about an unknown date but no later than November 2022, and continuing to on or about November 7, 2023, defendant devised, participated in, and executed a scheme to defraud clients of his luxury watch business.  As part of the scheme, defendant owned and operated "The Timepiece Gentleman," a Limited Liability Company incorporated in the State of California and operating from a storefront in Beverly Hills, within the Central District of California.

Defendant, who also became to be known as "The Timepiece Gentleman" in marketing, online, and social media materials,

purported to buy and sell luxury watches, including selling watches for clients on consignment.  In a typical consignment sale, a client would ship a watch to the Timepiece Gentleman and defendant would take possession of the watch, agreeing to display the watch for sale at The Timepiece Gentleman storefront in Beverly Hills, as well as through online and social media marketing.  Once the watch was sold, defendant was supposed to remit the sales proceeds back to the client, less a consignment fee, typically around 5 percent of the sales price.  If a watch did not sell on consignment within a specified period of time or for a specified price, the watch was to be returned to the client.

In addition to the consignment sale business, defendant also purported to purchase watches on behalf of clients.  In a typical purchase, a client would send funds to defendant, often by interstate wire transfer into bank accounts controlled by defendant or through other payment processors such as Zelle, for the purpose of defendant locating and purchasing a specified watch on behalf of the client. Defendant conducted his purported business of consignment sales, as well as buying and selling watches, for clients located both in the Central District of California as well as throughout the United States and online.

Rather than market and sell watches on consignment or purchase specified watches on behalf of clients, as defendant agreed to do, defendant instead defrauded victims, taking their watches and funds and using them for his own benefit.  The scheme generally operated as follows:

a.  Defendant would communicate with clients by text message, email, telephone calls, and through other means, in

interstate and foreign commerce, to discuss clients sending The Timepiece Gentleman their luxury watches for consignment sale.

b.   Defendant would agree to take possession of client watches for consignment sale purportedly so that the watches could be displayed and advertised for sale both in person at The Timepiece Gentleman storefront in Beverly Hills, as well as through online and social media marketing.

c.   Defendant would send messages attaching shipping labels to clients so that they could ship their watches, via the mail or other common carriers, to The Timepiece Gentleman for consignment sale.

d.   Defendant would take possession of client watches for consignment sale, agreeing that the sales proceeds be remitted back to the clients shortly after the watches were sold.

e.   However, rather than selling client watches and remitting payment back to the clients who owned the watches and who were owed payment for the sales, defendant would instead sell or otherwise dispose of the watches for his own benefit.

f.   For example, defendant would sell client watches, unbeknownst to the client, and would keep the sales proceeds for himself.

g.   Defendant would also use client watches, unbeknownst to the client, as collateral for loans that defendant took out from lenders.  As part of those loans, rather than selling watches on consignment for the client, defendant would instead transfer possession of the client watches as collateral to lenders, without client knowledge or approval to do so.

h.   When a client would inquire about the status of a watch on consignment sale, defendant would falsely state that the watch had not yet sold, when, in fact, the watch had been sold or disposed of, and the funds kept for defendant's own benefit.

i.   Additionally, defendant would communicate with clients by text message, email, telephone calls, and through other means, in interstate and foreign commerce, to arrange for clients to send defendant money so that defendant could locate and purchase watches on behalf of clients.

j.   Defendant would accept funds from clients, including by wire transfers and through Zelle, for the purpose of defendant purchasing a specified watch on behalf of the client.

k.   Rather using the client funds to purchase watches on behalf of clients, however, defendant would use the funds for other purposes, including to fund his lavish lifestyle such as purchasing or leasing luxury vehicles, apartments, and other luxury goods.

l.   When a client would inquire about the status of a purchase for which the client sent defendant money or of a watch on consignment sale, defendant would often send another watch to the client to tide the client over and lull the client into a false sense of security regarding the status of the purchase or sale.  However, similar to a typical Ponzi scheme, that other watch defendant would send to lull clients would often actually belong to other clients who had themselves provided that other watch to defendant for consignment sale, and did not know of or authorize the use of their watches by defendant for this purpose.

For example, through his scheme, defendant defrauded the following client victims, among others:

12

<u>Victim B.S.</u>

m.    On or about July 6, 2023, defendant sent messages to client victim B.S., a resident of Arizona, convincing B.S. to send watches to defendant for consignment sale.

n.    On or about July 6, 2023, defendant sent a message to B.S. attaching a Federal Express shipping label so that B.S. could ship his Patek Phillipe watch to defendant for consignment sale.

o.    On or about July 7, 2023, defendant sent a message to B.S. attaching a Federal Express shipping label so that B.S. could also ship his Rolex Sky-Dweller watch to defendant for consignment sale.

p.    On or about July 7, 2023, B.S. sent two packages via Federal Express, one with a Patek Phillippe watch and a second with a Rolex Sky-Dweller watch, to The Timepiece Gentleman in Beverly Hills, California, for consignment sale.

q.    On or about July 18, 2023, when B.S. inquired about the consignment sales, defendant told B.S. that the Rolex Sky-Dweller watch had sold for $70,000.

r.    On or about July 20, 2023, defendant told B.S. that the Patek Phillipe watch had also been sold.  When asked why he hadn't yet received payment for the sold watches, defendant told B.S. that defendant did not have the funds to pay.  In place of payment, and to lull B.S. from taking action that could potentially expose the fraud scheme, defendant sent B.S. a Rolex Red Letter Sea-Dweller watch on or about July 27, 2023.

s.    After receiving the Rolex Red Letter Sea-Dweller watch from defendant, B.S. determined that the watch actually belonged to another client victim, F.L., who had provided the watch to defendant

for consignment sale and was not aware and did not authorize defendant to use the watch for payment of a debt defendant FARRER owed to another client.

Victim F.L.

t.    On or about July 12, 2023, client victim F.L., a resident of San Diego, California, sent a Rolex Red Letter Sea-Dweller watch via Federal Express to The Timepiece Gentleman in Beverly, Hills, California, for consignment sale.

u.    Beginning on or about July 28, 2023, client victim F.L. attempted to reach out to defendant to determine the status of the consignment sale of his watch, but was not able to obtain a response from defendant regarding the status of the sale.

v.    F.L. later viewed a social media post by B.S. regarding a Rolex Red-Letter Sea-Dweller that B.S. had received from defendant in lieu of payment owed to B.S. for consignment sale of another watch. F.L. determined that to be his watch that he had sent to defendant for consignment sale. F.L. was not aware and had not authorized defendant to send his watch to B.S. as payment for a debt defendant owed, rather than selling the watch on consignment and paying B.S. the sale proceeds, as defendant had agreed to do.

Victim W.S.

w.    Beginning in or around November 2022, defendant exchanged messages with client victim W.S., a resident of South Carolina, regarding the purchase and sale of watches. In or around May or June 2023, W.S. began sending watches to The Timepiece Gentleman in Beverly Hills, California, for consignment sale.

x.    On or about June 26, 2023, defendant obtained a loan of $300,000 sent to him by interstate wire transfer from a lender,

14

1  using as collateral for the loan watches that W.S. had previously

2  sent to The Timepiece Gentleman for consignment sale.  Defendant also

3  transferred possession of W.S.'s watches to the lender to secure the

4  loan.  W.S. was not aware and did not authorize defendant to use his

5  watches as collateral for a loan, nor did W.S. authorize defendant to

6  transfer possession of his watches to the lender rather defendant

7  than selling the watches and remitting the purchase funds to W.S.

8       y.   On or about July 15, 2023, W.S. sent, via Malca-Amit,

9  a private secure interstate shipping carrier, approximately 75

10 watches to The Timepiece Gentleman in Beverly Hills, California, for

11 consignment sale.

12      z.   After sending the approximately 75 watches to The

13 Timepiece Gentleman, W.S. discovered that rather than advertising and

14 selling watches that W.S. had previously sent to defendant, defendant

15 had instead used the watches as collateral for a loan and gave

16 possession of W.S.'s watches to the lender.  W.S. had to then pay the

17 lender the balance on the loan, plus interest, to reclaim possession

18 of his own watches.

19 Victim L.L.

20      aa.  On or about July 21, 2023, client victim L.L.

21 delivered two watches, a Richard Mille Baby Nadal and a Rolex

22 Platinum Arabic Dial, to The Timepiece Gentleman in Beverly Hills,

23 California, for consignment sale.

24      bb.  On or about July 21, 2023, defendant received a wire

25 payment of $170,000 for the sale of L.L.'s Richard Mille Baby Nadal

26 watch, which was later picked up by the buyer from The Timepiece

27 Gentleman storefront on or about July 24, 2023.

28

cc.   On or about July 31, 2023, despite having previously sold L.L.'s Richard Mille Baby Nadal watch as well as L.L.'s Rolex Platinum Arabic Dial watch and having not remitted payment back to L.L. for the sales, when L.L. inquired about the watches, defendant falsely told L.L. that both his watches were still at The Timepiece Gentleman store.

As a result of the scheme to defraud, defendant fraudulently obtained money and property belonging to over 40 victims, totaling losses to victims of at least $5,691,005.

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

17.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:      7    [U.S.S.G. § 2B1.1(a)(1)]

Loss > $3,500,000      +18   [U.S.S.G. § 2B1.1(b)(1)(J)]

10+ Victims            +2    [U.S.S.G. § 2B1.1(b)(2)(A)(i)]

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

18.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.  The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION AND COLLATERAL ATTACK

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

22.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are

1 unconstitutional, and any and all claims that the statement of facts

2 provided herein is insufficient to support defendant's pleas of

3 guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

5     23.  Defendant agrees that, provided the Court imposes a total

6 term of imprisonment on all counts of conviction within or below the

7 range corresponding to a total offense level of 24 (after reductions

8 for acceptance of responsibility) and the criminal history category

9 calculated by the Court, defendant gives up the right to appeal all

10 of the following: (a) the procedures and calculations used to

11 determine and impose any portion of the sentence; (b) the term of

12 imprisonment imposed by the Court; (c) the fine imposed by the Court,

13 provided it is within the statutory maximum; (d) to the extent

14 permitted by law, the constitutionality or legality of defendant's

15 sentence, provided it is within the statutory maximum; (e) the amount

16 and terms of any restitution order, provided it requires payment of

17 no more than $8,000.000; (f) the term of probation or supervised

18 release imposed by the Court, provided it is within the statutory

19 maximum; and (g) any of the following conditions of probation or

20 supervised release imposed by the Court: the conditions set forth in

21 Second Amended General Order 20-04 of this Court; the drug testing

22 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the

23 alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7);

24 and any conditions of probation or supervised release agreed to by

25 defendant in paragraph 2 above.

26     24.  The USAO agrees that, provided (a) all portions of the

27 sentence are at or below the statutory maximum specified above and

28 (b) the Court imposes a term of imprisonment within or above the

range corresponding to a total offense level of 24 (after reductions for acceptance of responsibility) and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $5,691,005.90.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

25.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

26.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the

1  entire plea agreement and vacate defendant's guilty pleas on any
2  remaining counts of conviction, with both the USAO and defendant
3  being released from all their obligations under this agreement, or
4  (c) leave defendant's remaining convictions, sentence, and plea
5  agreement intact.  Defendant agrees that the choice among these three
6  options rests in the exclusive discretion of the USAO.

7  EFFECTIVE DATE OF AGREEMENT

8      27.  This agreement is effective upon signature and execution of
9  all required certifications by defendant, defendant's counsel, and an
10  Assistant United States Attorney.

11  BREACH OF AGREEMENT

12      28.  Defendant agrees that if defendant, at any time after the
13  signature of this agreement and execution of all required
14  certifications by defendant, defendant's counsel, and an Assistant
15  United States Attorney, knowingly violates or fails to perform any of
16  defendant's obligations under this agreement ("a breach"), the USAO
17  may declare this agreement breached.  All of defendant's obligations
18  are material, a single breach of this agreement is sufficient for the
19  USAO to declare a breach, and defendant shall not be deemed to have
20  cured a breach without the express agreement of the USAO in writing.
21  If the USAO declares this agreement breached, and the Court finds
22  such a breach to have occurred, then: (a) if defendant has previously
23  entered guilty pleas pursuant to this agreement, defendant will not
24  be able to withdraw the guilty pleas, and (b) the USAO will be
25  relieved of all its obligations under this agreement.

26      29.  Following the Court's finding of a knowing breach of this
27  agreement by defendant, should the USAO choose to pursue any charge

28

that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

30.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

1                            NO ADDITIONAL AGREEMENTS

2        33.  Defendant understands that, except as set forth herein,

3    there are no promises, understandings, or agreements between the USAO

4    and defendant or defendant's attorney, and that no additional

5    promise, understanding, or agreement may be entered into unless in a

6    writing signed by all parties or on the record in court.

7            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

8        34.  The parties agree that this agreement will be considered

9    part of the record of defendant's guilty plea hearing as if the

10   entire agreement had been read into the record of the proceeding.

11   AGREED AND ACCEPTED

12   UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
13   CALIFORNIA

14   E. MARTIN ESTRADA
     United States Attorney
15

16   _____          10-7-24
     JOSHUA O. MAUSNER                      Date
17   Assistant United States Attorney

18   _____          10-7-24
     ANTHONY FARRER                        Date
19   Defendant

20   _____          10-7-24
     ERICA CHOI                            Date
21   Deputy Federal Public Defender
     Attorney for Defendant ANTHONY
22   FARRER

23

24                           CERTIFICATION OF DEFENDANT

25       I have read this agreement in its entirety.  I have had enough

26   time to review and consider this agreement, and I have carefully and

27   thoroughly discussed every part of it with my attorney.  I understand

28   the terms of this agreement, and I voluntarily agree to those terms.

                                         24

1  I have discussed the evidence with my attorney, and my attorney has

2  advised me of my rights, of possible pretrial motions that might be

3  filed, of possible defenses that might be asserted either prior to or

4  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

5  of relevant Sentencing Guidelines provisions, and of the consequences

6  of entering into this agreement.  No promises, inducements, or

7  representations of any kind have been made to me other than those

8  contained in this agreement.  No one has threatened or forced me in

9  any way to enter into this agreement.  I am satisfied with the

10 representation of my attorney in this matter, and I am pleading

11 guilty because I am guilty of the charges and wish to take advantage

12 of the promises set forth in this agreement, and not for any other

13 reason.

14 _____          _10_-_7_-_24_____

15 ANTHONY FARRER                          Date
   Defendant

16

17               CERTIFICATION OF DEFENDANT'S ATTORNEY

18      I am ANTHONY FARRER's attorney.  I have carefully and thoroughly

19 discussed every part of this agreement with my client.  Further, I

20 have fully advised my client of his rights, of possible pretrial

21 motions that might be filed, of possible defenses that might be

22 asserted either prior to or at trial, of the sentencing factors set

23 forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

24 provisions, and of the consequences of entering into this agreement.

25 To my knowledge: no promises, inducements, or representations of any

26 kind have been made to my client other than those contained in this

27 agreement; no one has threatened or forced my client in any way to

28 enter into this agreement; my client's decision to enter into this

                              25

1   agreement is an informed and voluntary one; and the factual basis set

2   forth in this agreement is sufficient to support my client's entry of

3   guilty pleas pursuant to this agreement.

4

5   ERICA CHOI                                Date
    Deputy Federal Public Defender
6   Attorney for Defendant ANTHONY
    FARRER
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26