E. MARTIN ESTRADA
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
JOSHUA O. MAUSNER (Cal. Bar No. 260251)
Assistant United States Attorneys
Chief, Violent and Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0619
    Facsimile: (213) 894-3713
    E-mail:   joshua.mausner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. CR 23-00601-JLS |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT ANTHONY FARRER |
| v. | |
| ANTHONY FARRER, aka "The Timepiece Gentleman," | Hearing Date: 01/31/2025<br>Hearing Time: 8:30 A.M. |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Joshua O. Mausner, hereby files its Sentencing Position Regarding Defendant Anthony Farrer ("defendant").

///

///

///

The government's Sentencing Position is based on the United States Probation Office's Presentence Report ("PSR") and disclosed recommendation letter, the record of the proceedings in this case, and any further evidence and argument that the Court may permit.

Dated: January 17, 2025         Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                LINDSEY GREER DOTSON
                                Assistant United States Attorney
                                Chief, Criminal Division


                                 /s/
                                JOSHUA O. MAUSNER
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On October 11, 2024, defendant Anthony Farrer ("defendant") pleaded guilty to Counts One and Seven of the Indictment in this matter, charging defendant with wire fraud, in violation of 18 U.S.C. § 1343, and mail fraud, in violation of 18 U.S.C. § 1341, respectively.  (Dkt. 27.)  Defendant's guilty pleas were entered pursuant to a plea agreement filed on October 7, 2024.  (Dkt. 24.)

On December 27, 2024, the United States Probation Office ("USPO") disclosed defendant's PSR.  (Dkt. 29.)  According to the USPO, defendant's total offense level is 24 and his criminal history category is III, which results in an advisory Guidelines range of 63 to 78 months.  (PSR at p. 3.)  The government agrees with the PSR's calculation, which is consistent with the parties' calculation in the plea agreement.

The government contends that a sentence of 70 months, at the mid-point of the Guidelines range, is sufficient but not greater than necessary under the 18 U.S.C. § 3553(a) factors to reflect the seriousness of defendant's crimes, promote respect for the law, and provide just punishment for the offense.  18 U.S.C. § 3553(a).

**II.  STATEMENT OF FACTS**

As set forth in the plea agreement and PSR, defendant operated a scheme that defrauded victims under the guise his luxury watch business.  Beginning prior to November 2022 and continuing to around November 7, 2023, defendant executed the scheme, which operated, in essence, similar to a Ponzi scheme.  As part of the scheme, defendant owned and operated "The Timepiece Gentleman," a Limited Liability Company incorporated in the State of California and operating from a

storefront in Beverly Hills.  Defendant, who came to be known as "The Timepiece Gentleman" in marketing, online, and social media materials, purported to buy and sell luxury watches, including selling watches for clients on consignment.  In a typical consignment sale, a client would ship a watch to the Timepiece Gentleman and defendant would take possession of the watch, agreeing to display the watch for sale at The Timepiece Gentleman storefront in Beverly Hills, as well as through online and social media marketing.  Once the watch was sold, defendant was supposed to remit the sales proceeds back to the client, less a consignment fee, typically around 5 percent of the sales price.  If a watch did not sell on consignment within a specified period of time or for a specified price, the watch was to be returned to the client.

In addition to the consignment sale business, defendant also purported to purchase watches on behalf of clients.  In a typical purchase, a client would send funds to defendant, often by interstate wire transfer into bank accounts controlled by defendant or through other payment processors such as Zelle, for the purpose of defendant locating and purchasing a specified watch on behalf of the client. Defendant conducted his purported business of consignment sales, as well as buying and selling watches, for clients located both in the Central District of California as well as throughout the United States and online.

Rather than market and sell watches on consignment or purchase specified watches on behalf of clients, as defendant agreed to do, defendant instead defrauded victims, taking their watches and funds and using them for his own benefit.  The scheme generally operated as follows:

      a.    Defendant would communicate with clients by text message, email, telephone calls, and through other means, in interstate and foreign commerce, to discuss clients sending The Timepiece Gentleman their luxury watches for consignment sale.

      b.    Defendant would agree to take possession of client watches for consignment sale purportedly so that the watches could be displayed and advertised for sale both in person at The Timepiece Gentleman storefront in Beverly Hills, as well as through online and social media marketing.

      c.    Defendant would send messages attaching shipping labels to clients so that they could ship their watches, via the mail or other common carriers, to The Timepiece Gentleman for consignment sale.

      d.    Defendant would take possession of client watches for consignment sale, agreeing that the sales proceeds be remitted back to the clients shortly after the watches were sold.

      e.    However, rather than selling client watches and remitting payment back to the clients who owned the watches and who were owed payment for the sales, defendant would instead sell or otherwise dispose of the watches for his own benefit.

      f.    For example, defendant would sell client watches, unbeknownst to the client, and would keep the sales proceeds for himself.

      g.    Defendant would also use client watches, unbeknownst to the client, as collateral for loans that defendant took out from lenders. As part of those loans, rather than selling watches on consignment for the client, defendant would instead transfer

3

possession of the client watches as collateral to lenders, without client knowledge or approval to do so.

   h. When a client would inquire about the status of a watch on consignment sale, defendant would falsely state that the watch had not yet sold, when, in fact, the watch had been sold or disposed of, and the funds kept for defendant's own benefit.

   i. Additionally, defendant would communicate with clients by text message, email, telephone calls, and through other means, in interstate and foreign commerce, to arrange for clients to send defendant money so that defendant could locate and purchase watches on behalf of clients.

   j. Defendant would accept funds from clients, including by wire transfers and through Zelle, for the purpose of defendant purchasing a specified watch on behalf of the client.

   k. Rather using the client funds to purchase watches on behalf of clients, however, defendant would use the funds for other purposes, including to fund his lavish lifestyle such as purchasing or leasing luxury vehicles, apartments, and other luxury goods.

   l. When a client would inquire about the status of a purchase for which the client sent defendant money or of a watch on consignment sale, defendant would often send another watch to the client to tide the client over and lull the client into a false sense of security regarding the status of the purchase or sale. However, similar to a typical Ponzi scheme, that other watch defendant would send to lull clients would often actually belong to other clients who had themselves provided that other watch to defendant for consignment sale, and did not know of or authorize the use of their watches by defendant for this purpose.

4

As laid out in greater detail in the plea agreement and PSR, defendant's scheme victimized individuals and businesses throughout the United. As a result of the scheme to defraud, defendant fraudulently obtained money and property belonging to over 40 victims, totaling losses to victims of at least $5,691,005.

### III. PSR GUIDELINES CALCULATIONS[1]

The USPO calculated defendant's base offense level at level 7, pursuant to U.S.S.G. § 2B1.1(a)(1). (PSR ¶ 78.) An 18-level enhancement was applied for loss amount in excess of $3,5000,000, but not more than $9,500,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(J). (PSR ¶ 80.) An additional two-level enhancement was applied because the offense involved more than ten victims, pursuant to U.S.S.G. § 81. (PSR ¶ 81.)

The government agrees with, and does not object to, the USPO's calculation of the offense level, which is consistent with the agreed-upon Guidelines factors in the plea agreement. (Plea Agreement ¶ 17.)

The PSR calculated defendant's criminal history category as Category III (PSR ¶¶ 95-105.) A total offense level of 24 with a criminal history category III results in a Guidelines range of 63 to 78 months.

### IV. ASSESSMENT OF THE SECTION 3553(a) FACTORS AND THE GOVERNMENT'S SENTENCING POSITION

In formulating a sentence that is "sufficient, but not greater than necessary" to comply with the goals of the Sentencing Reform Act, district courts "must treat the Guidelines as the starting point

---

[1] See PSR ¶¶ 78-90.

1 and the initial benchmark." United States v. Henderson, 649 F.3d
2 955, 959 (9th Cir. 2011) (quoting Kimbrough v. United States, 552
3 U.S. 85, 108 (2007) (internal citations and quotation marks
4 omitted)).  And, "in the ordinary case, the [United States
5 Sentencing] Commission's recommendation of a sentencing range will
6 reflect a rough approximation of sentences that might achieve
7 § 3553(a)'s objectives." Id. (internal citations and quotation marks
8 omitted).

9    In this case, a balancing of the section 3553(a) factors favors
10 a custodial sentence of 70 months, at the mid-point of the Guidelines
11 range, followed by a three-year period of supervised release.  A
12 sentence of 70 months' imprisonment reflects the seriousness of the
13 offense conduct and also takes into account defendant's age, his
14 acceptance of responsibility, and the mitigating circumstances
15 related to defendant's life circumstances and addiction issues.

16    As discussed in the PSR, defendant's conduct victimized a number
17 of individuals, resulting in serious harm and hardship to victims and
18 their families.  (PSR ¶¶ 58-61.)  The fraud scheme was large-scale,
19 including over 40 victims and a loss amount to these victims of at
20 least $5,691,005.  In aggravation, this was a crime of pure greed.
21 Defendant devised the fraud scheme, stealing money and property from
22 his customer victims under the guise of his seemingly legitimate
23 business, and used the fraud proceeds to fund his exorbitant and
24 lavish lifestyle, including purchasing and leasing luxury vehicles,
25 apartments, and other luxury goods.  (PSR ¶¶ 24-25, 27.)  Despite
26 being in criminal history category III, defendant does have a
27 somewhat lengthy and sustained criminal history dating back to age
28 19.  (PSR ¶¶ 92-103, 106-114.)  Additionally, it appears that

defendant was on probation with Los Angeles County at the time of the charged conduct here. (PSR ¶ 103.)

In mitigation, the PSR points to a number of factors related to defendant's upbringing, addiction issues, and personal tragedies that warrant consideration in fashioning defendant's sentence. (PSR ¶¶ 119, 132, 145, 146, 149.) While not an excuse for criminal conduct, much of his prior criminal history appears to be related to alcoholism and addiction.

Additionally, defendant has accepted responsibility for his actions, both prior to his arrest through public admissions on social media, as well as by agreeing to plead guilty early during these criminal proceedings. His acceptance of responsibility includes, as discussed below, agreement to pay full restitution to victims in an amount no less than $5,691,005.90. His early acceptance of responsibility has saved the government resources, and defendant should be credited with taking responsibility for his actions and agreeing to pay full restitution to his victims.

Accordingly, given the aggravating and mitigating factors, the government believes a sentence of 70 months' custody, at the mid-point of the Guidelines range, to be a fair and appropriate sentence.

**V.    RESTITUTION**

In his plea agreement, defendant agreed to payment of restitution to victims of at least $5,691,005.90. (Plea Agreement ¶ 10). The government has identified victims and provided notifications to these victims of these proceedings, including the ability to request restitution. However, additional victims continue to be identified. In order to allow time for additional victims to be identified, notified, and allowed the opportunity to submit

7

restitution requests, the government requests a deferred restitution hearing pursuant to 18 U.S.C. § 3664(d)(5), to ensure compliance with victims' rights laws.[2]

**VI.  CONCLUSION**

For the above reasons, the government respectfully submits that defendant should be sentenced to 70 months in custody, a three-year period of supervised release, payment of a $200 special assessment, and payment of restitution in an amount to be determined later.

---

[2] Government counsel conferred with counsel for defendant on January 15, 2025.  Counsel stated defendant has no objection to a continued restitution hearing.