CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Erica Choi (Bar No. 302351)
(E-Mail: erica_choi@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ANTHONY FARRER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY FARRER,<br><br>Defendant. | Case No. 2:23-cr-601-JLS<br><br>**DEFENDANT ANTHONY FARRER'S SENTENCING POSITION PAPER**<br><br>**Hearing: January 31, 2025, at 8:30 am** |

The defendant Anthony Farrer, by and through his counsel, Erica Choi, hereby submits his sentencing position in advance of the sentencing hearing. For the reasons explained herein, the defense respectfully requests a sentence of 63 months' imprisonment, followed by three years of supervised release with conditions.

                                        Respectfully submitted,

                                        CUAUHTEMOC ORTEGA
                                        Federal Public Defender

DATED: January 23, 2025      By  */s/ Erica Choi*
                                        ERICA CHOI
                                        Deputy Federal Public Defender
                                        Attorney for ANTHONY FARRER

## **TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ...................................................................................................1

III. OBJECTIONS TO PSR ......................................................................................4

    A.    PSR Corrections .............................................................................................4

        1.    Paragraph 54 .................................................................................4

        2.    Paragraph 56 .................................................................................4

        3.    Paragraph 102 ...............................................................................5

        4.    Paragraph 165 ...............................................................................5

    B.    Objection to Special Conditions ..................................................................5

        1.    Special Condition No. 12 .............................................................5

        2.    Special Condition No. 16 .............................................................7

IV. SENTENCING ARGUMENTS ..........................................................................8

V. CONCLUSION .....................................................................................................9

## I. INTRODUCTION

Anthony Farrer is a 36-year-old man who comes before the Court for sentencing. He is an entrepreneur who achieved great success, building a company and respected brand based on his knowledge of watches and marketing skills, before moving to Los Angeles. He is a father to a seven-year-old son. He is a son to loving and supportive parents, who are aging and in poor health. He survived the traumatic loss of his twin brother and biological mother, and is still processing those events. He suffers from addiction, which he has recently spent a great deal of time reflecting on.

The defense respectfully recommends a sentence of 63 months' imprisonment. A low-end sentence is requested based on Mr. Farrer's family circumstances, exceptional acceptance of responsibility, and treatment needs. Mr. Farrer has spent the past year in custody in serious introspection. He has a deeper understanding of his behaviors, the maladaptive thinking and actions that bring him before the Court for sentencing. He has remorse and empathy for his victims, and he is committed to making things right by paying restitution. In fact, he publicly acknowledged his wrongdoing and had individually reached out to his victims with a commitment to make things right before the filing of a criminal case. A sentence of 63 months, followed by three years' supervised release, is sufficient, but not greater than necessary, to achieve the statutory goals of sentencing.

## II. BACKGROUND

Mr. Farrer and his twin brother Cameron were adopted as infants. They were just eight months old when they were adopted by their parents, Don and Ruby Farrer. Mr. Farrer's biological mother struggled with alcoholism. His biological grandfather also suffered from alcoholism. Mr. Farrer himself struggles with alcoholism, and it appears his twin brother also did before he died.

Mr. Farrer's childhood was marked by restriction and temperance. Growing up, Mr. Farrer was not allowed to participate in sports or go to friends' homes. He and his siblings (twin brother and adopted sister) attended school and church, and were not

1

allowed to go anywhere else. They stayed home, rode their bikes outside. The family subsisted on fast food, mostly from the $1 menu.

After graduating from high school, Mr. Farrer got a job at a Texas Roadhouse. His co-workers were all in college. He moved into a house with them. At his job and with his roommates, Mr. Farrer was introduced to binge drinking and excessive partying. Compared to his restrictive childhood, Mr. Farrer suddenly had no supervision or real responsibilities. Unfortunately, he suffered a number of arrests and convictions (all related to alcohol).

When he was 21, Mr. Farrer moved to Dallas. He sought a fresh start. However, he could not pass a background check. Many job opportunities were foreclosed to him. He nonetheless tried his best to find ways to support himself. He worked in restaurants and bars, and then became a personal trainer. The party scene around him got bigger, and he began consuming alcohol excessively.

In 2012, Cameron was killed in a motorcycle accident. Mr. Farrer lost his twin brother suddenly and tragically. He attended his brother's funeral and felt numb. Sadly, Mr. Farrer did not have the benefit of grief counseling. He did not seek it at the time, and he has not had an opportunity to process the sudden loss of his twin brother in a therapeutic setting. In 2017, Mr. Farrer's biological mother died by suicide; she had survived breast cancer and had been sober for 25 years. But when the cancer returned, she took her own life.

Mr. Farrer founded Gentlemen Timepieces in Texas in late 2017. He built the business based on a personal interest in watches. He built a successful company from the ground up, forming good relationships with clients and becoming a trusted authority in the luxury watch world. He also studied content creation and social media. He built a successful online brand for his business, and gained hundreds of thousands of viewers on Youtube and other platforms. In 2022, Mr. Farrer sold Gentlemen Timepieces and moved to Los Angeles to start a new chapter.

       After moving to Los Angeles, Mr. Farrer started a new company, The Timepiece Gentleman. He had big visions for the future. He signed a lease for a luxury penthouse in Downtown Los Angeles, with a plan to use the space for brand partnerships, to rent out for filming, and to garner attention for his new company. He rented out a storefront in Beverly Hills. He continue to create videos online to generate interest in his company. Unfortunately, the transition to Los Angeles as not as smooth as he had hoped. The luxury watch market hit a downturn. The resale market for watches was difficult -- values dropped and clients were unhappy with the sale prices of their watches. Prices fluctuated and fell, Mr. Farrer could not keep up. Around this time, unfortunately, he relapsed. He consumed alcohol in excess to self-medicate the depression and anxiety growing inside of him. PSR ¶ 146.

       Mr. Farrer made terrible and criminal choices between 2022 and 2023. He accepted luxury watches under the guise of selling them on consignment. He traded watches that did not belong to him. He sold watches and kept the money, and made misrepresentations to victims about what happened to their property. He stole from people who had entrusted him to sell their valuable property. He kept thinking, if only the market turned or if an investor came in to save his company, everything might work out.

       Mr. Farrer's actions came to light when one of his victims uploaded a secretly recorded phone conversation, where he admitted to what he had done and the trouble he was in. Mr. Farrer did not run from the truth. He issued public videos acknowledging what he had done. He created a spreadsheet of everyone he owed money to, and began reaching out to them individually. He was, and still is, committed to paying back his victims. He did not hide. While he did travel after his crimes came to light, he was pursuing work opportunities in other states. He publicly posted his location at various points.

       After he was arrested, Mr. Farrer (through counsel) expeditiously informed the government he wanted to plead guilty. Mr. Farrer waited patiently in pretrial custody

until the government extended a plea offer. And once the plea offer was made, Mr. Farrer immediately accepted it. Mr. Farrer saved valuable government and Court resources by pleading guilty. He is eager to start working and make things right with his victims as soon as possible.

In jail, Mr. Farrer works as an orderly. He serves meals to other inmates three times a day. While the opportunities for classes are limited at MDC, he earned one certificate for Group Reading. Exhibit B. He is journaling, reflecting, and prioritizing his health. He is doing everything he can to better himself. While he has not spoken directly to his son while in custody, he thinks about him constantly and committed to becoming the best version of himself, so he can be the best father to Soren, that he can.

### III. OBJECTIONS TO PSR

**A.    PSR Corrections**

Mr. Farrer writes to make factual corrections to the PSR, none of which impact the guidelines calculations. The defense agrees with the guideline calculation and range in the PSR.

**1.    Paragraph 54**

The Instagram account @thetimepiece_gentleman does not belong to Mr. Farrer. That was an imposter account that used Mr. Farrer's images without his consent. Mr. Farrer recalls that in September or October of 2023, he was contacted by an HSI agent regarding that account. Mr. Farrer notified the agent that @thetimepiece_gentleman was a fraudulent account and not controlled by him.

**2.    Paragraph 56**

As explained above, @timepiece_gentleman was not his account. The attempts to sell six Rolex watches using Mr. Farrer's likeness were done without his knowledge and consent.

Defense counsel notes that a search on Instagram reveals an imposter account @thetimepiece__gentleman. The posts are dated as recently as December 30, 2024, with old images and videos of Mr. Farrer. Mr. Farrer has been in custody since his

4

initial appearance on November 8, 2023. He has not been posting, nor has anyone been posting on his behalf with his permission, while he has been in custody.

### 3. Paragraph 102

Mr. Farrer writes to clarify that he had over five years of sobriety between September 2016 and May 2022. The PSR notes two probation violations (April 9, 2018, and February to March 2022) involving alleged cocaine and alcohol use. However, Mr. Farrer did not use on those dates, and his probation was not revoked on those grounds. *See* Exhibit B, p. 6 (noting "4-19-18_PROB_VIOL_MTN_DENIED_-_CONT_ON_PROB_PER_JDG") and p. 7 (noting ("041122_P/V_MTN_FILED" and "051722_P/V_WARRANT_RECALLED-PROBATION_DISCHARGED"). With respect to the 2022 drug patch tests for cocaine, Mr. Farrer submitted to additional testing (hair and cuticle analysis), and a polygraph examination, all of which supported that he had not used cocaine.

Mr. Farrer was sober between 2016 and 2021. It was during those years that he built a successful business in Texas. *See* Exhibit A, Letter from Anthony Farrer; PSR ¶ 156. Mr. Farrer understands that when he is sober, he is the best version of himself. He is eager to achieve lasting sobriety again.

### 4. Paragraph 165

Mr. Farrer wishes to dispel any suggestion that he has assets that were not reported to the Probation Office. All of the vehicles listed were either repossessed, given away, or sold years ago. He has no access to any of the vehicles, no knowledge of their location, and no ability to take possession of any of them.

## B. Objection to Special Conditions

### 1. Special Condition No. 12

The Probation Office recommends a special condition prohibiting Mr. Farrer from using "Instagram social media and WhatsApp applications/platforms." ECF No. 28, p. 4. The defense objects for several reasons.

1    First, Mr. Farrer did not use Instagram and WhatsApp to commit his crimes. He
2    communicated directly with customers about their watches. Those conversations
3    occurred over text message, email, telephone calls, and in meetings. PSR ¶ 20; PSR ¶¶
4    19-46. Defense counsel has no information indicating he used Instagram or WhatsApp
5    to conduct fraud. If Mr. Farrer did communicate with victims on those apps, any
6    contacts were ancillary to direct phone calls, text messages, and meetings. Although
7    Mr. Farrer did post watches for sale on Instagram on August 8, 2023, and via
8    WhatsApp marketplace on October 2, 2023, those were unrelated to the fraud conduct.
9    Second, Instagram and WhatsApp are important ways for Mr. Farrer to keep in
10   contact with his friends, family, and the community. They are cost-effective means of
11   staying in contact with his support network. Prohibiting him from using Instagram and
12   WhatsApp will cut Mr. Farrer off from an important way that he connects and
13   communicates with others.
14   Third, an outright ban on social media raises First Amendment concerns. The
15   Supreme Court has held that banning sex offenders from commercial social networking
16   sites violates the First Amendment's Free Speech Clause. *Packingham v. North
17   Carolina*, 582 U.S. 98, 108 (2017). In *Packingham*, North Carolina had enacted a
18   statute making it a felony for a registered sex offender to gain access to a number of
19   websites, including commonplace social media websites like Facebook and Twitter. *Id.*
20   at 101. The Supreme Court struck down the North Carolina statute, finding it did not
21   survive intermediate scrutiny. *Id.* at 106. The Court emphasized that "to foreclose
22   access to social media altogether is to prevent the user from engaging in the legitimate
23   exercise of First Amendment rights." *Id* at 108. "Even convicted criminals—and in
24   some instances especially convicted criminals—might receive legitimate benefits from
25   these means for access to the world of ideas, in particular if they seek to reform and to
26   pursue lawful and rewarding lives." *Id.*
27   Mr. Farrer does not contest Special Conditions 13-15. Those already restrictive
28   conditions will limit his use and possession of digital devices and social media accounts

6

that are disclosed to the Probation Office, subject him to computer monitoring, and require he pay the costs of the computer monitoring program. Defense counsel notes these conditions are atypical in fraud cases; they are typically reserved for cases involving cyberterrorism or child pornography. Mr. Farrer does not wish to object to Special Conditions 13-15. However, he does ask the Court not to impose an outright ban from using Instagram and WhatsApp, which are important means of his connection to the community.

### 2. Special Condition No. 16

The Probation Office also recommends Mr. Farrer "not be self-employed nor be employed in a position that does not provide regular pay stubs . . . unless approved by the Probation Officer." This condition is not necessary, and will prevent Mr. Farrer from gaining meaningful employment from which he could pay restitution.

Mr. Farrer has almost always been self-employed. *See* PSR ¶¶ 155-159. Just prior to his arrest, he was self-employed as a social media consultant. PSR ¶ 155. Before moving to Los Angeles, he was the owner and founder of Gentlemen Timepieces in Texas from 2017-2022. PSR ¶ 156. And prior to Gentlemen Timepieces, he was self-employed as a real estate consultant and a personal trainer. PSR ¶¶ 158-159.

Mr. Farrer has skills and expertise in social media and marketing. He is a felon with a federal fraud conviction. Traditional job opportunities will be limited. Given that he has historically worked for himself, and the realities of his job opportunities upon release, the defense respectfully requests the Court not impose this special condition.

The standard conditions of supervised release will ensure Mr. Farrer is employed in a lawful occupation. Standard condition number 8 of the Second Amended General Order 20-04 states: "The defendant must work at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons and must notify the probation officer at least ten days before any change in employment or within 72 hours of an unanticipated change." This condition, combined with the other standard

and special conditions of supervised release, will ensure Mr. Farrer maintains lawful employment and does not commit any crimes in the future.

## IV. SENTENCING ARGUMENTS

The defense requests a sentence of 63 months' imprisonment. A low-end prison sentence takes into account the seriousness of the offense, while also considering Mr. Farrer's family circumstances, personal tragedies, and treatment needs. Mr. Farrer wants to pay his victims back -- a journey he started before his arrest and the filing of the instant criminal case. He is eager to begin working, making amends, and making meaningful strides in restitution payments once his prison term is complete.

Mr. Farrer lost his biological mother and twin brother under tragic circumstances. The family that he has left include his adoptive parents, his son, his biological grandmother, and his sister. His parents are older and in poor health. Mr. Farrer's mother is 80 years old and recently underwent a double bypass heart surgery. His father is 70 years old, suffered heart attack and had a stent placed in his heart. Mr. Farrer speaks with his parents regularly, and hopes to spend more time with them before it is too late.

Mr. Farrer has one son, Soren, who is seven years old. Soren resembles Mr. Farrer in many ways. Mr. Farrer was providing voluntary child support to Soren's mother prior to his arrest. He looks forward to being as involved as possible in his son's life. Soren and his mother are moving to Colorado in the summer of 2025. Mr. Farrer plans to request a BOP designation to FCI Englewood, Colorado, to be near his son.

Mr. Farrer understands he committed a terrible crime. He stole from customers who trusted him with their valuable possessions, and he put on appearances to portray a lavish lifestyle that he could not afford. Drinking and gambling exacerbated his dire financial situation. Yet, Mr. Farrer publicly admitted his wrongdoings and did not try to evade prosecution. He was in contact with his victims about what he had done, and kept them apprised of his situation and his whereabouts, and his commitment to pay them

back, prior to his arrest. The Court should consider Mr. Farrer's extraordinary acceptance of responsibility in mitigation.

Finally, Mr. Farrer suffers from alcoholism, as his criminal history and his letter to the Court reflect. Alcohol played a role in this offense. Three years of supervised release with conditions, including alcohol and drug abstention and treatment, will provide structure and sobriety for Mr. Farrer. A lengthier term of incarceration will not address his treatment needs.

## V. CONCLUSION

For all of these reasons, the defense respectfully requests a sentence of 63 months' imprisonment, and three years of supervised release with conditions. Sixty-three months is sufficient, but not greater than necessary, to achieve the goals of sentencing.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 23, 2025    By  */s/ Erica Choi*
ERICA CHOI
Deputy Federal Public Defender
Attorney for ANTHONY FARRER

9

# PROOF OF SERVICE

I, **Samantha Garza**, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202, Telephone No. (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached **Defendant Anthony Farrer's Sentencing Position Paper** on the following individual(s) by:

| [ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows: | [ ] Placing same in an envelope for hand delivery addressed as follows: | [ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows: | [X] Emailing same via email addressed as follows: |
|---|---|---|---|

**Amber Dodson**
Presentence USPO
Los Angeles (Roybal), California
Amber_Dodson@cacp.uscourts.gov

This proof of service is executed at Los Angeles, California, on **January 23, 2025**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/ Samantha Garza
**SAMANTHA GARZA**